EDWIN A. LOMBARD, Judge.
h The defendant appeals his conviction for possession of cocaine, a violation of La.Rev.Stat. 40:967(0(2). After review of the record in light of the applicable law and arguments of the parties, we affirm his conviction and sentence.

*525
Relevant Procedural History

Henry W. Golden[1] was arrested for possession of cocaine in April 2007. He pleaded not guilty at his arraignment in July 2007. The trial court denied the defendant’s motions to exclude expert testimony and, alternatively, for a Daubert[2] hearing in June 2010. The defendant’s motion to suppress was denied on November 5, 2010, and after a two day trial he was convicted by a six-person jury of possession of cocaine on November 18, 2010.
He appeals this conviction, arguing that the trial court erred in denying his motion to suppress, permitting introduction of impermissible other crimes evidence, denying his motion for a Daubert/Frye hearing as to the admissibility of the criminologist’s testimony concerning the test results of the substances ^contained in a tin container seized by the police at the time of his arrest, and in allowing the Orleans Parish District Attorney’s office to prosecute him after it recused itself in 2007.

Relevant Facts

The following evidence was adduced at the motion hearing and at trial.[3] On April 23, 2007, Detective Chad Perez of the New Orleans Police Department (NOPD) received information from a reliable confidential informant (Cl) that the defendant was distributing cocaine in the City of New Orleans. The Cl told Detective Perez that shortly after 5 p.m. the defendant would leave his French Quarter pet supply business, located on Dumaine Street near Decatur Street, and drive to the 800 block of North Salcedo Street in his black Toyota FJ Cruiser to make a narcotics sale. Accordingly, Detective Perez conveyed this information (including the description of the defendant and the defendant’s vehicle) to Detective Frankie Watts, another member of the narcotics Special Operations group, directing him to establish a surveillance of the 800 block of North Salcedo Street.
While Detective Watts undertook surveillance of the 800 block of North Salcedo, Detective Perez and his partner, Detective Nathan Gex, waited nearby but out of sight. After Detective Watts reported suspicious actions taken by the defendant under surveillance, Detectives Perez and Gex drove towards the defendant who was standing beside his black SUV parked in front of 829 North Salcedo Street. Upon seeing the detectives, the defendant immediately twisted |osideways, holding the small tin can behind his leg and then discarding it into a small planter box in front of the fence at 829 North Salcedo Street. Accordingly, based on the information provided by Detective Watts and their own observations, Detectives Perez and Gex decided to detain Mr. Golden. They exited the police vehicle and, while Detective Perez detained the defendant, his partner re *526 trieved a small tin Altoids can from the planter box. Detective Perez testified that the Altoids can, which was submitted into evidence, contained ten clear plastic bags each containing a white powered substance that, based upon his experience, he identified as cocaine. In addition, Detective Perez stated that, although he did not conduct the test himself, a field test on at least one of the ten bags inside of the Altoids can tested positive for cocaine and a K-9 search of the vehicle revealed six thousand dollars in U.S. currency in the center console of defendant’s vehicle. Finally, Detective Perez identified the defendant in court as the target of his investigation who he arrested on April 28, 2007.
Detective Watts’s testimony corroborated that of Detective Perez. He testified that on April 23, 2007, while assigned to the narcotics Special Operations group, he was directed by Detective Perez to set up surveillance in the 800 block of North Sal-cedo Street, between Orleans Avenue and St. Ann Street.[4] He was given the defendant’s name and a description of the vehicle involved, a black-colored SUV. Accordingly, Detective Watts parked on North Salcedo Street between 4:30 and 4:45 p.m. in a non-police unit and began his surveillance. Twenty minutes into his surveillance, Detective Watts observed the defendant park his vehicle approximately fifteen to twenty yards away from him, exit the vehicle, and pace |4back and forth. Approximately three to four minutes later, a police unit entered the block and the defendant discarded a small tin can he was holding in his hand into some shrubbery in front of 829 North Salcedo Street. The police unit — which was in the area unrelated to Detective Watts’ narcotics investigation — drove by. The defendant then retrieved the tin can, opened it, and manipulated something inside the can with his fingers. At that point, Detective Watts notified Detective Perez and Detective Gex of the suspicious activities he had observed. Within seconds, Detective Perez and Detective Gex pulled up to the defendant who was standing next to his SUV.
Detective Gex also testified at the motion hearing and trial, corroborating the testimony of Detectives Watts and Perez. He stated that on April 23, 2007, he first observed the defendant standing outside of a black Toyota “jeep” vehicle near the sidewalk of 829 North Salcedo Street. When the defendant saw him and his partner (Detective Perez) approach, he appeared very nervous, turning his body sideways and discarding an object off to his side into a little flower area. When asked his first reaction upon seeing defendant’s actions, Detective Gex replied: “Based on the information that Detective Watts had given us everything was an indication that he was in possession of narcotics and he was attempting to get rid of it because of police presence.” After exiting their vehicle, Detective Gex recovered the Altoids can that the defendant had discarded in a flowerbed between the sidewalk and the fence while his partner detained the defendant. Detective Gex identified the Altoids can in evidence as the one discarded by defendant that contained ten bags of cocaine. In addition, Detective Gex testified that six thousand dollars in |5U.S. currency, consisting of thirty one-hundred dollar bills and one hundred fifty twenty-dollar bills, was recovered from the defendant’s vehicle.
Detective Gex testified that the defendant’s actions, as relayed by Detective *527 Watts — holding an object in his hand but, upon seeing a police unit pass, becoming very nervous and discarding the object into some shrubbery or grass and retrieving it only when the police vehicle left the area, then opening it up and manipulating the contents inside, as if checking on or counting its contents — were consistent with narcotics activity and that this was the basis of the decision to make an investigatory stop. He reiterated that as they pulled up behind defendant’s vehicle, the defendant discarded the object in his hand into a grassy area right in front of the fence. Although he conceded that he could not recall whether he and Detective Perez were still in their vehicle when defendant discarded the object in his hand, Detective Gex insisted that the defendant discarded it before they put their hands on him.
John Palm, a criminalist for the NOPD at the time of the defendant’s arrest, was qualified by the trial court as an expert in the chemical analysis of substances to determine whether they contain a controlled dangerous substance. Palm testified that he performed analysis on four of the ten small plastic bags in evidence and found them to be positive for cocaine. He testified that, although his report did not specify where the testing was performed, the type of machine used for the testing (as listed in the report) and the post-Hurricane Katrina testing time-frame indicated that the testing was done in the Jefferson Parish Crime Lab.
Jeffery Louis Zander, a forensic toxicologist from Sacramento, California, was qualified as an expert in the field of forensic toxicology and in the analysis of | f,narcotics such as cocaine, heroin and Ecstasy. He testified on behalf of the defendant that Mr. Palm’s report on the testing of the substances in the Altoids was faulty because the report did not indicate that that he ran a blank in the analyzing instrument at the end of the testing to insure that the instrument was not contaminated.
Anna Duggar, director of forensic chemistry at Loyola University, testified that she had been director of the NOPD Crime Lab for three and one-half years and had “signed off’ on Mr. Palm’s April 2007 report on the testing of the substances seized in the instant case. Ms. Duggar’s “best guess” was that the testing in this case had been done at the Jefferson Parish Sheriffs Office Crime Lab, based on the instrument noted as having been used in the testing. Ms. Duggar conceded that in April 2007 there were no written protocols in effect in the narcotics section, but stated that she essentially followed the “Scientific Working Group” (“SWG”) recommended minimum standards for forensic drug identification. She confirmed that the written protocols of the NOPD Crime Lab were destroyed in Hurricane Katrina and that the lab was without any written protocols from at least August 29, 2005, through her last day employed there in 2010. However, Ms. Duggar stated that the lab complied substantially with the SWG drug requirements — although she conceded that she had no written documentation showing such compliance.
When asked whether Mr. Palm had proficiency tests during the period of January 2007 through April 2007, or during the twelve months preceding April 2007, Ms. Duggar stated that he had not to her knowledge, adding that “there certainly had not been any occasions brought to our attention that Criminalist Palm was in need of any corrective action.” In addition, she asserted that blanks were run all day and every day but keeping records of them was time consuming. She |7conceded, however, that record-keeping was an important part of the technique and record-keeping process to show what *528 the analyst did. Ms. Duggar said that analysts were instructed to record a positive or negative result on any test they actually performed.

Errors Patent

A review of the record reveals no errors patent on the face of the record. The State argues, however, that the trial court’s failure to order payment of court costs or to expressly waive the payment of court costs should be designated an error patent. We disagree.
La.Code Crim. Proc. art. 887(A), relied on by the State, states in pertinent part:
A. A defendant who is convicted of an offense or is the person owing a duty of support in a support proceeding shall be liable for all costs of the prosecution or proceeding, whether or not costs are assessed by the court, and such costs are recoverable by the party or parties who incurred the expense.... In addition, any judge of a district court ... within the state shall be authorized to suspend court costs (emphasis added).
Notably, La.Code Crim. Proc. art. 887(A) does not mandate the assessment of costs. Rather, the language “whether or not costs are assessed by the court,” contemplates that a trial court may or may not assess costs. Thus, if the defendant is convicted and therefore liable for costs, the State may, if so inclined, seek to recover those costs. In this case, the State failed to do so in the trial court. Because La. Code Crim. Proc. art. 887 does not mandate an assessment of costs, we decline to remand the matter back to the trial court under the guise of an error patent review.
[ ^Assignment of Error No. 1
In his first assignment of error, the defendant asserts that it was error for the trial court to deny his motion to suppress because the stop by Detectives Perez and Gex was “imminent” and, thus, an unlawful governmental intrusion that resulted in defendant abandoning the Altoids can with the cocaine inside. This argument presupposes, however, that Detectives Perez and Gex did not have reasonable suspicion to stop the defendant and, therefore, rendering the abandoned Altoids can (containing the cocaine) tainted fruit of an illegal stop.
The Fourth Amendment to the U.S. Constitution protects citizens against unreasonable searches and seizures. La. Const. art. 1, § 5, providing broader protection against unreasonable searches and seizures than the Fourth Amendment, states, in pertinent part, that “[ejvery person shall be secure in his person, property, communications, houses, papers, and effects against unreasonable searches, seizures, or invasions of privacy.” A seizure in violation of La. Const. art. 1, § 5 occurs when police, without reasonable suspicion, either actually stop an individual or create a situation wherein an actual stop of the individual is “imminent.” State v. Tucker, 626 So.2d 707, 713 (1993); see also State v. Hamilton, 2009-2205, p. 3 (La.5/11/10), 36 So.3d 209, 212 (when a citizen is actually stopped without reasonable cause or when a stop without reasonable cause is “imminent,” the right to be left alone is violated, rendering unlawful any resultant seizure of abandoned property).
In determining whether reasonable suspicion exists to conduct an investigatory stop, courts must take into account the totality of the circumstances in a process that allows police officers to draw upon their own experience and specialized training to make inferences from and deductions about the ' cumulative 19information available to them that might elude an untrained person. State v. Kirton, 2011-1201, p. 1 (La.6/24/11), 66 So.3d 431, 432 (citation omitted). The determination of whether reasonable suspicion exists for an investigatory stop is a purely *529 objective inquiry that takes into account “all of the information known collectively to the law enforcement personnel involved in the investigation.” State v. Elliott, 2009-1727, p. 5 (La.3/16/10), 35 So.3d 247, 251 (citation omitted).
In the instant case, Detective Perez received information from a Cl who had proven reliable on numerous previous occasions that shortly after 5:00 p.m. on the date in question the defendant would leave his French Quarter pet supply business and travel to the 800 block of N. Salcedo Street in his black Toyota FJ Cruiser to make a narcotics sale. Detective Watts parked on North Salcedo Street between 4:30 and 4:45 p.m. and began his surveillance. Some twenty minutes later he observed the defendant park his vehicle in the 800 block of North Salcedo, get out, and pace back and forth. Approximately three to four minutes later, a police unit entered the block, whereupon the defendant discarded a small tin can he was holding in his hand into some shrubbery in front of 829 North Salcedo Street. After the police unit passed by, the defendant retrieved the tin can, opened it, and manipulated something inside it with his fingers. At that point, Detective Watts relayed the information to Detectives Perez and Gex and, based on his observation of suspicious activities, requested an investigatory stop of defendant. As Detectives Perez and Gex approached him, the defendant discarded the Altoids can containing the cocaine.
Thus, the two detectives clearly had reasonable suspicion to believe the defendant was committing an offense — possessing cocaine or some other controlled dangerous substance — at the time they proceeded toward him. The trial |incourt properly denied the defendant’s motion to suppress the evidence. There is no merit to this assignment of error.

Assignment of Eiror No. 2

 In his second assignment of error, the defendant argues that the trial court erred in permitting the introduction of impermissible evidence of other crimes committed by him. Specifically, the defendant refers to the following question by the prosecutor and answer by Detective Perez, during the detective’s direct examination at trial:
BY STATE:
Q What first drew your attention to Mr. Golden?
A I received some information about a narcotics sale that may [sic] take place in the 800 block of—
DEFENSE COUNSEL:
Objection.[5]
THE COURT:
Move on.
BY STATE:
Q In the 800 block of what?
A 800 block of [North] Salcedo Street.
Q With that information what did you decide to do?
Evidence of other crimes, wrongs or acts committed by the defendant is generally inadmissible because of the risk that the trier of fact will convict the |T defendant of the immediate charge based on his other *530 criminal acts. State v. Jones, 99-0861, p. 17 (La.App. 4 Cir. 6/21/00), 769 So.2d 28, 40.
La.Code of Evid. art. 404(B)(1) states:
Except as provided in Article 412, evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, of the nature of any such evidence it intends to introduce at trial for such purposes, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding.
Thus, while La.Code of Evid. art. 404(B)(1) generally bars admission of evidence of other crimes, wrongs or acts by the defendant, it does expressly permit the introduction of evidence of other crimes “when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding.” State v. Colomb, 98-2813, p. 1 (La.10/1/99), 747 So.2d 1074. In this ease, the comment by Detective Perez referring to information he obtained from the Cl was integral to explaining why he directed Detective Watts to set up surveillance in the 800 block of North Salcedo Street. But even assuming arguendo that Detective Perez’s reference to the Cl telling him that the defendant intended to make a narcotic sale was an erroneous admission of other crimes evidence, the error was harmless. See State v. Robertson, 2006-1537, p. 9 (La.1/16/08), 988 So.2d 166, 172 (an error is harmless if it can be said beyond a reasonable doubt that the guilty verdict rendered in the case was not attributable to that error). The evidence introduced at trial was overwhelming: the testimony of three police officers corroborated the information received from the Cl and the contraband discarded by the defendant tested positive for cocaine. Accordingly, it 112strains commonsense to suggest that the jury was inclined to convict the defendant of simple possession of cocaine based, not on the evidence introduced at trial that he was in possession of an Altoids tin container containing cocaine, but because of what Detective Perez said the Cl said about a prospective narcotics sale. Accordingly, we find no merit in this assignment of error.

Assignment of Eiror No. 3

In his third assignment of error, the defendant argues that the trial court erred in denying his motion for a Daubert hearing on the admissibility of NOPD Crimi-nalist John Palm’s testimony concerning the results of his testing of the substances contained in the Altoids container.
The trial court acts as a gatekeeper to the admissibility of expert testimony. Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993); State v. Foret, 628 So.2d 1116, 1121 (La.1993). Because the determination regarding the competency of a witness is a question of fact, the trial judge is vested with wide discretion and, accordingly, rulings on the qualifications of an expert witness will not be set aside absent manifest error. State v. Young, 2009-1177, pp. 7-9 (La.4/5/10), 35 So.3d 1042, 1046-47.
In this case, prior to trial, the defendant filed a motion to exclude the testimony of NOPD Crime Lab Criminalist John Palm or, alternatively, to conduct a Daubert hearing to determine whether his testimony should be admitted. The trial court *531 denied the motion(s), issuing a written ruling stating, in pertinent part:
Any weaknesses in the manuals, methods or lab record keeping are appropriate for cross examination at trial. The criminalist in question has been recognized repeatedly throughout the various sections of Criminal District Court, not to mention other state and federal courts, as an expert in his field, and has nearly 40 years of experience in the field. In light of this history and the explanations provided, this court | isbelieves that the threshold of reliability for admissibility has been met, as contemplated by Daubert and Foret.
This court denied the defendant’s application for supervisory review on the merits, noting the trial court’s reasons for its ruling and concluding:
Based on the trial court’s reasoning, we do not find that the trial court abused its discretion in denying the defense motion to exclude Mr. Palm’s expert testimony and the request for a Daubert Hearing.
State v. Golden, unpub., 2010-1003 (La.App. 4 Cir.9/7/10). The Louisiana Supreme Court subsequently denied writs and the defendant’s request for a stay. State v. Golden, 2010-2268 (La.10/13/10), 46 So.3d 1277.
Under the law-of-the-case doctrine, an appellate court will not reverse its pretrial determinations unless the defendant presents new evidence tending to show that the decision was patently erroneous and produced an unjust result. Courts of appeal generally refuse to reconsider their own rulings of law on a subsequent appeal in the same case. State v. Gillet, 99-2474, p. 5 (La.App. 4 Cir.5/10/00), 763 So.2d 725, 728.
In the instant case, the defendant’s writ argument as to this claim of error consisted of sixty-three lines and his appellate argument on this claim of error consists of seventy-three lines. Save for the concluding sentence in his writ argument, his appellate argument consists of his entire writ argument, with the same paragraph structure, with a total of eleven lines inserted at two points. Even considering the additional lines, the defendant’s appellate argument is the same as his pri- or writ argument. The additional verbiage merely stresses that his attack is not upon the testing instrument that was used to analyze the sample, which he admits “is widely accepted and used in the scientific community,” but that it is the “unreliable and invalid human inputs that are questioned.” This, however, is the | usame attack set forth in his original motion to exclude Palm’s testimony or, alternatively, conduct a Daubert hearing, i.e., “the New Orleans Crime Lab lacks quality assurance data, written standards, uniform procedures, tests of known negatives versus known positives, and other deficiencies which provide reliability to the scientific method used by the laboratory.” While the defendant vaguely asserts at the conclusion of his appellate argument on this issue that “[e]videnee produced at trial bears out the faulty technic [sic] applied by the analyst in the case at bar,” that is the extent of his reference to testimony adduced at trial. The defendant does not point to any particular faulty technique applied by Criminalist John Palm. Under these circumstances, we do not find that the defendant has established that this court’s prior, considered writ decision on the merits was patently erroneous and produced an unjust result. Accordingly, the law-of-the-case doctrine applies and we will not reconsider the pretrial writ decision on this claim of error.

Assignment of Error No. 4

Finally, in his last assignment of error, the defendant argues that the ac *532 tion of the Office of the Orleans District Attorney in recusing itself in 2007, yet continuing thereafter to prosecute him, constituted a structural defect/error in the proceedings, thus rendering the outcome of the case — his conviction — null and void, and necessitating a new trial.
The defendant submits that the State recused itself on December 20, 2007, citing a minute entry from that date which states:
The defendant, Henry W. Golden III, appeared before the court for re-allot [sic] case with counsel, A.J. Ibert.
The State recused [sic] itself in this matter.
The court recused itself in this matter and ordered the matter re-allotted.
|1fiThe trial court’s order of recusal states:
This Honorable Court hereby issues this order of Recusal for the following reasons:
STATE RECUSES ITSELF IN THE MATTER
It further orders that case be re-allotted excluding this Court from the allotment process.
Subsequent to the purported 2007 self-recusal by the “State” in Section “J,” the prosecution of defendant in this case by the Office of the Orleans Parish District Attorney’s Office continued unabated in other sections of Orleans Parish Criminal District Court, with Sections “H” and “E,” in turn, recusing themselves, before the case ended up in Section “L.” A February 12, 2009, minute entry apparently reflects the first proceeding in Section “L.” The purported 2007 self-recusal by the “State” is never referred to again. Rather, the defendant filed a motion to recuse the Office of the Orleans Parish District Attorney in Section “L” and the trial court granted the motion on June 12, 2009. However, the State filed a writ application and this court reversed the trial court ruling.
Structural errors are limited to errors that “infect the entire trial process and necessarily render a trial fundamentally unfair; they deprive a defendant of basic protections without which a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence.” State v. Ruiz, 2006-1755, p. 6 (La.4/11/07), 955 So.2d 81, 85 (citation omitted). Specifically, other than the following six restricted classes of cases, the U.S. Supreme Court has failed to find structural error of the sort requiring reversal of a conviction: (1) the total deprivation of the right to counsel; (2) a biased trial judge; (3) unlawful exclusion of grand jurors of defendant’s race; (4) denial of self-representation at trial; (5) | lfidenial of a public trial; and (6) a defective reasonable doubt instruction. State v. Langley, 2006-1041, p. 6, (La.5/22/07), 958 So.2d 1160, 1164.
In this case, the defendant’s argument is a simple one — that neither the recused District Attorney nor his staff would have had “jurisdiction” to proceed forward on the case after it recused itself. Even accepting arguendo that the defendant’s continued prosecution by a District Attorney’s Office that recused itself is problematic, it cannot be said that such action infected the entire trial process and necessarily rendered defendant’s trial fundamentally unfair, or that it deprived defendant of basic protections without which a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence.
Moreover, the defendant’s motion to re-cuse the Office of thé District Attorney indicates that the initial “self-recusal” was considered moot at that point. Notably, although the trial court granted the defendant’s motion to recuse the Office of the *533 District Attorney, this court reversed that order and the Louisiana Supreme Court affirmed our ruling. State v. Golden, 2009-0920 (La.App. 4 Cir. 9/9/09), writ denied, 2009-2377 (La.1/8/10), 24 So.3d 856. Likewise, the stay order reflected in the July 10, 2009, district court minute entry, is clearly in reference to the State’s writ application seeking supervisory review of the June 12, 2009, district court judgment granting the defendant’s motion to recuse. When this court reversed that decision, the trial court denied the defendant’s motion for a stay order pending the Louisiana Supreme Court decision on his writ application seeking review of that decision, thus indicating that the stay order of July 10, 2009, was no longer in effect. Finally, the defendant does not allege that he was prejudiced by any confusion as to the duration of the stay. This assignment of error is without merit.

117Conclusion

The defendant’s conviction and sentence are affirmed.
AFFIRMED

. The defendant is identified as Henry W. Golden III in the trial court minute entries and docket master; a May 2, 2007, minute entry from a bond hearing in Section "D” states that the trial court called “Henry Golden, Jr.” as a witness, and subsequently ruled that he would be permitted to sign a P.S.B.U. bond in the full amount of the bond set for defendant. It appears that defendant is Henry W. Golden III.

. Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).

.When reviewing a trial court’s ruling on a motion to suppress, an appellate court is not limited to evidence adduced at the hearing on the motion to suppress; it may also consider pertinent evidence given at trial of the case. State v. Robinson, 2008-0652, p. 20 (La.App. 4 Cir. 5/13/09), 11 So.3d 613, 624. Accordingly, as there were no factual discrepancies between the testimony of the police officers at the motion hearing and trial, the facts are merged into one narrative to avoid redundancy.

. The transcript indicates that the parties testifying frequently misidentified the street in question as South Salcedo Street rather than North Salcedo Street. To avoid confusion, we refer only to North Salcedo Street.

. The State argues, pursuant to La.Code Crim. Proc. art. 841(A), that the defendant failed to preserve the issue for review because defense counsel failed to specify the ground for his objection. However, in the instant case, the ground was obvious, and defense counsel would have been remiss if he had stated the ground in open court within the hearing of the jury, as it would have emphasized the reference to the sale of narcotics. While defense counsel could have asked to approach the bench to make his objection, given the obvious nature of the objection, it was not necessary.