Judge Joy Cossich Lobrano
|! Devin Garrison (“Defendant”) appeals his August 26, 2015 convictions for distribution of marijuana[1] and possession of a legend drug.[2] Further, Defendant appeals his sentence of twenty years at hard labor as a second-felony offender under the Louisiana Habitual Offender Law[3] for distribution of marijuana. Consolidated with Defendant’s appeal is the State of Louisiana’s (the “State”) application for supervisory writs requesting review of the district court’s January 15, 2016, ruling adjudicating Defendant to be a second-felony offender rather than a third-felony offender. Finding that this Court should not reconsider its prior reversal of the district court’s grant of Defendant’s motion to suppress, we affirm Defendant’s convictions. Further, finding that the district court erred in ^adjudicating Defendant a second-felony offender instead of a third-felony offender, we grant the State’s writ application, reverse the district court’s finding that Defendant is a second-felony offender rather than a third-felony offender, vacate Defendant’s sentence of twenty years as a second-felony offender, and remand this case for Defendant to be resen-tenced as a third-felony offender.[4]
Factual Background
On June 10, 2014, Detective Dave Biondillio (“Det. Biondillio”) observed Susan Mizell (“Mizell”) at Brothers Gas Station (“Brothers”).[5] On that day, Det. Biondillio, who was working with a DEA task force, was conducting surveillance in the area of Brothers at Bullard Road and the North I—10 Service Road, which he described as an area of New Orleans East known for “a lot of narcotics trafficking.” Det. Biondillio observed Mizell parked in a red PT cruiser. During the approximately ten minutes that passed while Det. Biondillio observed her, Mizell did not exit her car or purchase gas.[6] Instead, Det. Biondillio observed Mi-zell have a conversation on a cell phone, *336 after which a blue BMW driven by Defendant drove up to Brothers. Mizell began to follow Defendant.
Det. Biondillio then radioed another officer with the task force, Sergeant Dennis Bush (“Sgt. Bush”), to inform him of Mizell’s conduct. Sgt. Bush Rsurveilled Defendant and Mizell to a nearby apartment complex. Defendant and Mizell entered an apartment with a key. The two were inside for five to ten minutes before Mizell returned to the PT cruiser. Mizell then drove away. Sgt. Bush radioed Det. Biondillio as Mizell drove away, but stayed in his surveillance position and continued to observe the apartment. About ten minutes after Mizell left, Sgt. Bush observed Defendant leave the apartment.
Det. Biondillio stopped Mizell after she left Defendant’s apartment, advised her of her rights, and informed her of the ongoing investigation. Det. Biondillio obtained a picture of Defendant based on the license plate number of the blue BMW and showed it to Mizell. She verified that she had purchased marijuana from Defendant, who she knew as “Magnolia.” She surrendered a bag of green vegetable matter, which she indicated was located in her bra, and was arrested via summons for simple possession of marijuana. Det. Biondillio then returned to the apartment and maintained surveillance while typing a search warrant.
Defendant left the apartment before the search warrant was completed. Upon leaving, Defendant was arrested for distribution of marijuana by Sergeant Scott Zemlick (“Sgt. Zemlick”), who was supervising Det. Biondillio and Sgt. Bush during their work with the DEA task force. One bag of green vegetable matter was seized from Defendant’s person. Sgt. Zemlik then obtained the key to Defendant’s apartment, entered the premises with other officers and secured the area. Officers waited at the apartment while Det. Biondillio conferred with the magistrate and obtained a signature on the search warrant. After the warrant was signed, officers searched Defendant’s apartment and seized one clear bag containing 27.5 pills scored with the Mercedes-Benz emblem, one clear bag containing nine pills scored 1 ¿with the number “627,” one digital scale, and a razor blade from a jewelry box in the master bedroom.
Brian Schulz (“Schulz”), a forensic drug analyst, testified that his job requires him to examine evidence collected from a crime scene and to determine whether controlled dangerous substances are present. At trial, Schulz identified State’s Exhibit 1 as the August 15, 2014, report he authored documenting his test results on the evidence recovered in this case. He tested vegetative matter, one pressed red tablet, six green pressed tablets marked with a Mercedes Benz symbol, twenty-one blue pressed tablets also bearing Mercedes-Benz symbols, and nine white round tablets marked AN627. The specimens proved to be marijuana, methamphetamine,[7] and Tramadol.
Following the jury trial on August 26, 2015, Defendant was convicted of distribution of marijuana and possession of a leg *337 end drug.[8] On September 15, 2015, the district court denied Defendant’s motions for new trial and for post-verdict judgment of acquittal. On that same date, Defendant waived all delays and the district court sentenced Defendant to concurrent sentences of fifteen years for distribution of marijuana and three years for possession of a legend drug.
The State then filed a multiple offender bill charging Defendant as a third-felony offender based on a prior conviction for attempted armed robbery and a 1 ¿prior conviction for unauthorized use of a vehicle. Following a multiple bill hearing on January 15, 2016, the district court adjudicated Defendant a second-felony offender, vacated his original fifteen year sentence, and resentenced him to twenty years at hard labor.[9] The State timely filed notice of intent to seek supervisory review of the district court’s ruling adjudicating Defendant a second, but not a third, felony offender.
On April 11, 2016, this Court issued an order consolidating the State’s supervisory writ application with Defendant’s appeal. We now address both Defendant’s appeal and the State’s application for supervisory writs.
Pro Se Assignments of Error
Defendant assigns two errors in his pro se brief. First, he asserts that the statements, identification, and evidence were obtained as a result of an illegal stop of Mizell and, consequently, should have been excluded as “fruit of the poisonous tree.” See Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). This issue previously came before this Court in an application for supervisory writs. See State v. Garrison, unpub., 2015-0425 (La.App. 4 Cir. 7/13/15). The State successfully obtained review of that ruling, and this Court found that the district court abused its discretion in granting Defendant’s motion to suppress. A review of that writ application reflects that the State provided this Court with a copy of the motion hearing transcript, including the district court’s ruling, and a copy of Defendant’s memorandum in support of his motion to suppress, thus supplying this Court with Defendant’s position on the motion.
| /‘The ‘law of the case’ doctrine applies to all prior rulings or decisions of an appellate court or the Supreme Court in the same case, not merely those arising from the full appeal process. This policy applies to parties who were parties to the case when the former decision was rendered and who thus had their day in court.” State v. McElveen, 2010-0172, p. 13, fn. 8 (La.App. 4 Cir. 9/28/11), 73 So.3d 1033, 1054 (citations omitted). The law of the case doctrine requires that, as a general rule, appellate courts refuse to reconsider their own rulings on a subsequent appeal of the same case. State v. Robertson, 2013-1403, p. 4 (La.App. 4 Cir. 4/9/14), 136 So.3d 1010, 1012 (citations omitted). “Under the law-of-the-case doctrine, an appellate court will not reverse its pretrial determinations unless the defendant presents new evidence tending to show that the decision was patently erroneous and produced an unjust result.” Id. (quoting State *338 v. Golden, 2011-0735, p. 13 (La.App. 4 Cir. 5/23/12), 95 So.3d 522, 531).[10] This exception to the general rule of law of the case is construed narrowly, and all three parts of this burden must be met in order to garner reconsideration. See, e.g. State v. Cox, 2011-0670 (La.App. 4 Cir. 2/22/12), 85 So.3d 252, 256 (stating that this Court was “barred” from reconsidering a ruling on a supervisory writ which reversed a grant of a motion to suppress where the defendant presented no new evidence). In the case sub judice, because Defendant has adduced no new evidence tending to show that the prior [ 7ruling was patently erroneous and produced an unjust result, this Court is barred from reconsidering its pri- or decision. This assignment of error lacks merit.
In his second pro se assignment of error, Defendant asserts that he “believes that the jury came back with a verdict of possession of marijuana” instead of distribution of marijuana and that the district court “upgraded” the charge to distribution.[11] In response to these serious allegations, this Court ordered that the verdict forms be filed by the district court as an exhibit to this appeal. A review of the verdict forms indicates, notwithstanding Defendant’s accusations, that this assignment of error lacks merit. Defendant was properly convicted of distribution of marijuana and the record contains no evidence that the district court tampered with the jury’s verdict.
Application for Supervisory Writs No. 2016-K-362
In this consolidated application for supervisory writs, the State seeks review of the district court’s adjudication of Defendant as a second-felony offender rather than a third-felony offender. The State argues that the district court abused its discretion by finding the State had not proven beyond a reasonable doubt that Defendant was convicted on May 15, 2008, of unauthorized use of a vehicle in Texas. Finding that the district court did abuse its discretion, we grant the writ, vacate Defendant’s sentence, and remand for Defendant to be sentenced as a third-felony offender.
At the multiple bill hearing on January 15, 2016, Officer George Jackson (“Officer Jackson”) was qualified by stipulation as an expert in latent fingerprint | ^analysis. He testified he took Defendant’s fingerprints on the morning of the hearing, and he identified State’s Exhibit 1 as the card bearing those fingerprints. Officer Jackson then identified State’s Exhibit 2 as a bill of information containing a plea of guilty form, docket master, minute entry and arrest register from a Louisiana conviction for attempted armed robbery[12] bearing Case No. 481-258. State’s Exhibit 2 contained fingerprint impressions but they were too dark, and thus not suitable for comparison purposes. However, Officer Jackson said he was successful in obtain *339 ing a fingerprint card associated with the arrest register contained in State’s Exhibit 2, which he identified as State’s Exhibit 3, Officer Jackson testified the arrest register in State’s Exhibit 2 bore the same folder number (2142045) as the folder number listed on State’s Exhibit 3, as well as the identical name, date of birth, address, charge, and FBI number. Officer Jackson compared the right thumbprint from State’s Exhibit 3 to the right thumbprint contained on State’s Exhibit 1 and concluded the right thumbprints on State’s Exhibits 1 and 3 were identical and belonged to Defendant.[13]
Continuing, Officer Jackson said he reviewed State’s Exhibit 4, which was a certified conviction packet from the State of Texas, containing two bills of information detailing separate charges against Defendant—one for unauthorized use of a vehicle (Case No. 1111206), and another for evading arrest or detention using a vehicle (Case No. 1111279). The Texas certified conviction packet contained a guilty plea as to each charge, two Waivers of Jury Trial forms and judgments of conviction as to the Texas charges. The waivers and judgments Iscontained fingerprints. Officer Jackson was able to compare the thumbprint from the conviction for evading arrest or detention using a vehicle (Case No. 1111279), to the fingerprints on State’s Exhibit 1. That thumbprint matched the thumbprint contained on State’s Exhibit 1. Officer Jackson indicated the thumbprint from the unauthorized use of a vehicle (Case No. 1111206) was not suitable for comparison, but both of the judgments of conviction bore identical information as to Defendant’s name, date of birth, race, sex and CID number. Concluding, Officer Jackson testified comparison of the thumbprint in State’s Exhibits 3 and 4 with the corresponding digit on State’s Exhibit 1 produced a conclusive match to Defendant.
At the multiple bill hearing, the State indicated it was not using the Texas conviction for evading arrest or detention using a vehicle to enhance Defendant’s sentence because that offense was only a misdemeanor. Instead, the State elected to use the Louisiana conviction for attempted armed robbery and the Texas conviction for unauthorized use of a vehicle to enhance Defendant’s conviction. Defendant argued that the bill of information for the Texas conviction is defective for purposes of the multiple bill because it listed a vehicle value range “[of] $1,500.00 or more but less than $20,000.00,” as to the offense of unauthorized use of a vehicle, while the Texas statutory definition of that offense, Section 31.07 of the Texas Penal Code,[14] does not specify a value amount. In support of this argument, Defendant cited State v. Kennerson, 96-1518 (La.App. 3 Cir. 5/7/97), 695 So.2d 1367, for the proposition that both the Texas and the Louisiana “statutes |1(lmust translate properly.” Additionally, the defense claimed an absence of proof that Defendant was properly Boykinized at the time he entered his guilty plea in Texas renders that conviction insufficient for purposes of the multiple bill. The district court reasoned:
The court is concerned about the Texas conviction. The Court has multiple *340 concerns. There is no transcript. There is no actual Boykin as we are familiar with it. There is something where the clerk has checked off some boxes. I have nothing to convince me other than a box being checked off that counsel was actually sitting there with the defendant going through Boykinization.
Further, the Court is somewhat troubled by the fact that the statutory scheme in Texas itself does not have an amount albeit that the Bill of Information included an amount that would comport or might logically comport with Louisiana Revised Statute 14:68.
The Court is also concerned about the fingerprint as to that specific count being not readable. When the Court considers all of those things together with the case cited by defense, State v. Ken-nerson, 695 So.2d 1367, albeit that that is a Third Circuit case in Louisiana.
The Court is going to because of the comments just made ... adjudicate the defendant a double offender.
In State v. Stanfield, 2013-1193 (La.App. 4 Cir. 3/26/14), 137 So.3d 788, 794, this Court noted:
To obtain a habitual offender conviction, the State is required to establish both the prior felony conviction and that the defendant is the same person convicted of that felony. State v. Payton, 2000-2899, p. 6 (La. 3/15/02), 810 So.2d 1127, 1130, citing State v. Neville, 96-0137 (La. App. 4 Cir. 5/21/97), 695 So.2d 534, 538-39. The court in Payton explained that in attempting to establish identity, the State may present: (1) testimony from witnesses; (2) expert opinion regarding the fingerprints of the defendant when compared with those in the prior record; (3) photographs in the duly authenticated record; or (4) evidence of identical driver’s license number, sex, race and date of birth.
Id. at p. 6, 810 So.2d at 1130-31. In the case at bar, the Texas certified pack of court documents from case number 1111206 included a document entitled “Judgment Certificate of Thumbprint.” This document contained what was labeled as an inked right thumb. Officer Jackson testified at the habitual offender hearing |nthat he took a set of Defendant’s prints that day in court and said he was unable to compare the right thumbprint he took in court to the right thumbprint contained on the “Judgment Certificate of Thumbprint” because the latter print was not suitable for comparison. However, he said both Texas judgments of conviction (unauthorized use of a vehicle and evading arrest or detention using a vehicle) bore identical information as to Defendant’s name, date of birth, race, sex and CID number. Moreover, Officer Jackson testified that the right thumbprint for Defendant’s conviction for evading arrest or detention using a vehicle was a match to the right thumbprint he took in court prior to the start of the habitual offender hearing.
The Texas certified conviction packet pertaining to Defendant’s conviction for unauthorized use of a vehicle also contains a document entitled “Judgment of Conviction by Court—Waiver of Jury Trial.” The judgment of convietion/waiver of jury trial form reflects that a judgment of conviction by plea of guilty was rendered on May 15, 2008. It lists the names of the presiding judge, the attorney for the state, the attorney for Defendant, and the criminal charge (unauthorized use of a vehicle, a violation of Texas Penal Code § 31.07). At the bottom of the judgment of conviction/waiver of jury trial form are two check-off boxes, the first signifying that Defendant appeared in person with his counsel, the second indicating that Defendant knowingly, intelligently, and voluntarily waived the right to representation *341 by counsel in writing in open court and pled guilty. The first box is checked off in Defendant’s case, evidencing that he appeared with counsel to plead guilty. The second box is not checked. In addition, the judgment of conviction/waiver of jury trial form contains a paragraph printed underneath the two check-off boxes. That portion of the form reads:
ha Counsel/Waiver of Counsel (select one)
[x] Defendant appeared in person with Counsel.
□ Defendant knowingly, intelligently, and voluntarily waived the right to representation by counsel in writing in open court.
Both parties announced ready for trial. Defendant waived the right of trial by jury and entered the plea indicated above. The Court then admonished Defendant as required by law. It appeared to the Court that Defendant was mentally competent to stand trial, made the plea freely and voluntarily, and was aware of the consequences of this plea. The Court received the plea and entered it of record. Having heard the evidence submitted, the Court found Defendant guilty of the offense indicated above. In the presence of Defendant, the Court pronounced sentence against Defendant.
According to State v. Shelton, 621 So.2d 769, 779-780 (La.1993):
If the defendant denies the allegations of the [habitual offender] bill of information, the burden is on the State to prove the existence of the prior guilty pleas and that defendant was represented by counsel when they were taken. If the State meets this burden, the defendant has the burden to produce some affirmative evidence showing an infringement of his rights or a procedural irregularity in the taking of the plea. If the defendant is able to do this, then the burden of proving the constitutionality of the plea shifts to the State. The State will meet its burden of proof if it introduces a “perfect” transcript of the taking of the guilty plea, one which reflects a colloquy between judge and defendant wherein the defendant was informed of and specifically waived his right to trial by jury, his privilege against self-incrimination, and his right to confront his accusers. If the State introduces anything less than the “perfect” transcript, for example, a guilty plea form, a minute entry, an “imperfect” transcript, or any combination thereof, the judge then must weigh the evidence submitted by the defendant and by the State to determine whether the State has met its burden of proving that the defendant’s prior guilty plea was informed and voluntary, and made with an articulated waiver of the three Boykin rights. [Footnotes omitted.]
In State v. Watkins, 2013-1248 (La.App. 4 Cir. 8/6/14), 146 So.3d 294, 309, this Court considered the same claim made by Defendant in this case, that the State failed to prove he made a knowing and intelligent waiver of his rights prior to entering a plea of guilty to the Texas conviction for unauthorized use of a vehicle, __[iSrelying on identical Texas state court/conviction documents quoted herein. This Court concluded that the State had presented requisite proof, stating:
... the paragraph underneath the two check-off boxes is a new paragraph. It is not a continuation of the one full sentence next to the waiver-of-counsel check-off box. The paragraph reciting that the defendant waived the right of trial by jury and entered the plea indicated above freely and voluntarily logically applies to the plea taken, regardless whether or not he was represented by counsel at the taking of the plea. All *342 the first check-off box states is: “Defendant appeared in person with Counsel.” The only language in the judgment of conviction/waiver of jury trial form that recites that the defendant actually waived his right to a jmy trial and that the court accepted the plea of guilty and entered it of record is the language contained in the one full paragraph. Even though defendant in the instant case was represented by counsel at that Texas proceeding, he still had to waive his right to trial by jury, and the trial court still had to accept the plea.
It is obvious from the face of the Texas judgment of conviction/waiver of jury trial form that the sole purpose of the two one sentence check-off boxes at the bottom of the form is to evidence that the defendant either was represented by counsel at the taking of the plea, or that he knowing, intelligently, and voluntarily waived the right to representation by counsel at the taking of the plea. The separate, full paragraph obviously is intended to reflect what is supposed to occur in the actual taking of the plea, to-wit, whether the defendant is represented by counsel or whether he has knowingly, intelligently, and voluntarily waived his right to counsel.
More importantly, the full paragraph in the counsel/waiver of counsel part of the form below the counsel/waiver of counsel checkoff boxes recites, in part: “The Court then admonished Defendant as required by law.” This is a reference to Texas Code of Criminal Procedure art. 26.13, which expressly requires that prior to accepting a plea of guilty the trial court “shall admonish the defendant of.... ”[15]1 uBoth the defendant and *343 the state equate the admonishment referenced in the judgment of conviction/waiver of jury trial form in the instant case to the trial court advising defendant of his three Boykin rights. However, that is not necessarily the case, as “whether a trial court has complied with Article 26.13 and whether it has complied with Boykin are two separate issues.” Gardner v. State, 164 S.W.3d 393, 398 (Tex.Crim.App.2005).
Tex.C.Cr.P. Art. 26.13 mandates such admonishment by the trial court before it accepts a guilty plea evidences that the paragraph on the judgment of conviction/waiver of jury trial form detailing that the court admonished the defendant, that it appeared to the court that the defendant made the plea freely and voluntarily and was aware of the consequences of the plea, et cetera, applies not just to when the defendant waives his right to counsel, but also to when he is represented by counsel. Thus, we find no merit to Mr. Watkins’ suggestion that the face of the judgment of convic-tionAvaiver of jury trial form evidences that the trial court did not advise him of his rights in connection with the guilty plea.
Id., 2013-1248 pp. 27-33, 146 So.3d 294, 312-14
In this ease, as in Watkins, supra, the Texas certified pack contains the previously discussed judgment of conviction/waiver-of jury trial form, affirmatively stating that Defendant waived the right to trial by jury and entered the plea of guilty to the listed offense; that the court “then” “admonished” Defendant |1Bas required by law; that it appeared to the court that Defendant was mentally competent to stand trial, made the plea voluntarily, and was aware of the consequences of the plea; that the district court received the plea and entered it of record; and that it found Defendant guilty and pronounced sentence. The sentence as reflected by the judgment of conviction/waiver of jury trial was fifteen days in “county jail.”
Based upon the analysis performed by this Court in Watkins, supra, in the case sub judice, the State met its burden to prove the existence of the prior guilty plea and that Defendant was represented by counsel when it was taken. Consequently, the burden of proof shifted to Defendant *344 to show that his Texas guilty plea was not voluntary. Defendant made no such showing. Nothing in the Texas certified conviction packet establishes that Defendant’s plea of guilty did not represent a knowing and voluntary decision. Accordingly, Defendant failed to meet his burden of proof, and the burden did not shift back to the State to show that the plea represented a knowing and voluntary choice. Therefore, the district court abused its discretion in finding that the 2008 Texas conviction could not be used to adjudicate Defendant a third-felony offender.
For the forgoing reasons, Defendant’s convictions are affirmed. The district court’s ruling that Defendant is a second-felony offender rather than a third-felony offender is reversed, and Defendant’s twenty years at hard labor sentence as a double offender for distribution of marijuana is vacated. The case is remanded, and the district court is instructed to resen-tence Defendant as a third-felony offender as to his distribution of marijuana conviction.
CONVICTION AFFIRMED; WRIT GRANTED; SENTENCE VACATED; REMANDED WITH INSTRUCTIONS
JENKINS, J., DISSENTS; REASONS TO FOLLOW

. La. R.S. 40:966(A)(1).

. At the time of the offense, possession of Tramadol was made illegal by La. R.S. 40:1238.1, which prohibited possession of legend drugs without prescriptions. Two relevant changes have taken place since that time. First, La. R.S. 40:1238.1 was redesignated, although its contents did not change, as La. R.S. 40:1060.13 by H.C.R. No. 84 of the 2015 Regular Legislative session. Thus, any reference to La. R.S. 40:1238.1 in this opinion refers to the version of the statute in place on June 10, 2014. Secondly, Tramadol has been reclassified. Tramadol, at the time of this opinion, is classified as a Schedule IV controlled dangerous substance. See La. R.S. 40:964 Schedule IV(A)(3). Thus, any reference to Tramadol as a legend drug is a reference to its classification at the time of the offense.

. La. R.S. 15:529.1 et seq,

. Because we find that Defendant was not sentenced under the proper section of the Louisiana Habitual Offender statute and must be resentenced, we pretermit Defendant's sole counseled assignment of error, which asserts that his sentence is excessive. Further, we note that Defendant's conviction and sentence of three years for possession of a legend drug is unchanged by this opinion.

. Det. Biondillio was the sole witness to testify at the motion to suppress hearing on January 30, 2015.

. Mizell testified that she did purchase gas and a soft drink from Brothers.

. Defendant's counseled brief emphasizes the fact that Schulz refers to this substance sometimes as MDMA and sometimes as methamphetamine. MDMA is a common acronym for the chemical methylenedioxymethampheta-mine. See National Institute on Drug Abuse, "What is MDMA?” available at https://www. drugabuse.gov/publications/drugfacts/mdma-ecstasymolly. See also La. C.E. Art. 201 (allowing for the discretionary taking of judicial notice of a fact capable "of accurate and ready determination by resources whose accuracy cannot reasonably be questioned”). Further, Defendant was not convicted of any charge related to this particular substance.

. In addition, the district court found Defendant guilty of the misdemeanor charge of possession of marijuana and sentenced him to ninety days.

. Our review of the record for errors patent reveals one. In sentencing Defendant as a second-felony offender, the district court failed to restrict Defendant's sentence in conformity with La. R.S. 15:529.1(G), requiring all sentences be served without benefit of probation or suspension of sentence. However, in light of this Court's finding that Defendant is a third-felony offender and must be resen-tenced; this patent error is rendered moot.

.In Golden, this Court denied writs when the defendant challenged the district court's denial of his motion to exclude the testimony of a criminalist. Golden, 2011-07365 at 12, 95 So.3d at 531. In that case, despite the fact that this Court did not exercise its jurisdiction over that particular evidentiary ruling, this Court found that the law of the case doctrine barred reconsideration of the issue “unless the defendant presents new evidence tending to show that the decision was patently erroneous and produced an unjust result.” Id.

. It should be noted that Defendant requested to see the verdict forms at a hearing following his conviction. Although his attorney stated at that time that she would file a motion for the verdict forms, no such motion appears in the record.

. La. R.S. 14:(27)64.

. This conviction for attempted armed robbery was the basis of the district court's ruling that Defendant is a second-felony offender.

. Texas Penal Code § 31.07 provides:
Unauthorized use of a vehicle
(a) A person commits an offense if he intentionally or knowingly operates another’s boat, airplane or motor-propelled vehicle without the effective consent of the owner.
(b) An offense under this section is a state jail felony.

. Texas Code of Criminal Procedure art. 26.13 states:
(a)Prior to accepting a plea of guilty or a plea of nolo contendere, the court shall admonish the defendant of:
(1) the range of the punishment attached to the offense;
(2) the fact that the recommendation of the prosecuting attorney as to punishment is not binding on the court. Provided that the court shall inquire as to the existence of a plea bargain agreement between the state and the defendant and, if an agreement exists, the court shall inform the defendant whether it will follow or reject the agreement in open court and before any finding on the plea. Should the court reject the agreement, the defendant shall be permitted to withdraw the defendant’s plea of guilty or nolo contendere;
(3) the fact that if the punishment assessed does not exceed the punishment recommended by the prosecutor and agreed to by the defendant and the defendant’s attorney, the trial court must give its permission to the defendant before the defendant may prosecute an appeal on any matter in the case except for those matters raised by written motions filed prior to trial;
(4) the fact that if the defendant is not a citizen of the United States of America, a plea of guilty or nolo contendere for the offense charged may result in deportation, the exclusion from admission to this country, or the denial of naturalization under federal law; and
(5)the fact that the defendant will be required to meet the registration requirements of Chapter 62, if the defendant is convicted of or placed on deferred adjudication for an offense for which a person is subject to registration under that chapter.
(b) No plea of guilty or plea of nolo conten-dere shall be accepted by the court unless it appears that the defendant is mentally competent and the plea is free and voluntary,
(c) In admonishing the defendant as herein provided, substantial compliance by the court is sufficient, unless the defendant affirmatively shows that he was not aware of the consequences of his plea and that he was misled or harmed by the admonishment of the court.
(d) The court may make the admonitions required by this article either orally or in writing. If the court makes the admonitions in writing, it must receive a statement signed by the defendant and the defendant’s attorney that he understands the admonitions and is aware of the consequences of his plea. If the defendant is unable or re *343 fuses to sign the statement, the court shall make the admonitions orally.
(e) Before accepting a plea of guilty or a plea of nolo contendere, the court shall, as applicable in the case:
(1) inquire as to whether a victim impact statement has been returned to the attorney representing the state and ask for a copy of the statement if one has been returned; and
(2) inquire as to whether the attorney representing the state has given notice of the existence and terms of any plea bargain agreement to the victim, guardian of a victim, or close relative of a deceased victim, as those terms are defined by Article 56.01.
(f) The court must substantially comply with Subsection (e) of this article. The failure of the court to comply with Subsection (e) of this article is not grounds for the defendant to set aside the conviction, sentence, or plea.
(g) Before accepting a plea of guilty or a plea of nolo contendere and on the request of a victim of the offense, the court may assist the victim and the defendant in participating in a victim-offender mediation program.
(h) The court must substantially comply with Subsection (a)(5). The failure of the court to comply with Subsection (a)(5) is not a ground for the defendant to set aside the conviction, sentence, or plea.
(i) Notwithstanding this article, a court shall not order the state or any of its prosecuting attorneys to participate in mediation, dispute resolution, arbitration, or other similar procedures in relation to a criminal prosecution unless upon written consent of the state.